UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTONIO JOHNSON AND OLIVIA PULOKA, | NO. 2:20-cv-00573-RSM |
| Plaintiffs, | **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | NOTE ON MOTION CALENDAR: |
| COLUMBIA DEBT RECOVERY, LLC dba GENESIS CREDIT MANAGEMENT, LLC, | November 27, 2020 |
| Defendant. | |

## I.  <u>INTRODUCTION</u>

"[T]here's a judgment.  So, it looks like we have sent the garnishment to your employer."

*-Misty, Genesis Credit Management, LLC to Plaintiff Antonio Johnson, 11/17/19 telephone call*

Plaintiff Antonio Johnson was, understandably, frightened upon learning that there was a judgment against him for a debt related to an apartment he had amicably left two years earlier.  He did not remember being served with a lawsuit, he did not remember owing over $8,000, and, as a proud new father, he could not afford to have his wages garnished.  It was not clear how he and his partner would be able to navigate this devastating blow to their finances.

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

The reality of the situation, however, was quite different. **There was no judgment, and there was no garnishment**. Columbia Debt Recovery, LLC dba Genesis Credit Management, LLC ("Genesis") knew this as well; its own files had no indication that any of this had occurred, but over the course of three phone calls, Genesis kept lying to Mr. Johnson in the hopes of intimidating him into paying money that he and his partner never owed.

Over the course of one and a half months, Genesis attempted to collect over $8,000 comprised of mostly fees, charges, and interest, through phone calls and letters that it objectively knew it could not prove. Today, eight months after this case was filed, after Genesis finally admitted that that it lied about the judgment, and after its own documents demonstrate that the amount is not owed, Genesis is still reporting those amounts to Ms. Puloka's credit.

Genesis will likely attempt to minimize its behavior as some sort of innocent "misunderstanding," and thus recast its behavior through the lens of the "bona fide error" defense.[1] However, despite having the burden to prove the defense, Genesis has failed to meet any of its elements, such as identifying the errors, the violations resulting from the errors, or the procedures adapted to avoid the unidentified errors. Even if it could establish each of these elements, such a defense is completely undermined by the fact that Genesis is still reporting the overinflated balance to credit bureaus. If Genesis does have some (still unidentified but carefully-crafted) procedures, it either does not employ them or they simply do not work.

Perhaps the largest irony here is that if Genesis had not taken these aggressive measures to collect over $8,000.00 which was not owed, it could have easily explained the supposed debt – as

---

[1] While perhaps one mix-up or "confused" employee could make a mistake like this – however unlikely that may be, and irrelevant under strict liability – the fact that Genesis repeated these brazenly false statements (in numerous distinct phone calls and culminating in a letter) leads only to the conclusion that this was deliberate conduct.

PLAINTIFFS' Partial MSJ - 2
2:20-CV-00573-RSM

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

Plaintiffs wrote a check to their new landlord instead of the prior landlord, and thus, by oversight, did not send payment for their last month of rent. With the benefit of counsel and the discovery process, Plaintiffs were able to do what Genesis refused to do – identify the basis of the debt. As it turns out, Plaintiffs owe $1,215.00 for one month's rent and some small incidentals such as utilities and late fees. Had anyone asked, Plaintiffs would have happily paid this amount. No lies or threats were required.

Genesis' vicious approach to debt collection is the reason the Fair Debt Collection Practices Act ("FDCPA") and Washington Collection Agency Act ("WCAA") exist, and Plaintiffs respectfully request that this Court grant summary judgment in their favor.

## II. FACTS

Antonio Johnson and Olivia Puloka are King County residents who, in 2019, had the bittersweet pleasure of welcoming their first child around the same time that they began dealing with Genesis. Olivia Puloka works for the City of Seattle as a customer service representative. Antonio Johnson is an Early Childhood Education Teacher for SEED ECS at Temple Beth Am. Columbia Debt Recovery, LLC is a debt collector and Washington-licensed collection agency that does business as Genesis Credit Management.

### A. Background

In May 2017, Plaintiffs Antonio Johnson and Olivia Puloka took over an existing apartment lease at Linden Square Apartments. *See* Declaration of Antonio Johnson ("*Johnson Decl.*") at ¶ 2. The monthly rent was $1,215.00 and the fixed-term lease expired on November 30, 2017. *Id.* On November 7, 2017, Plaintiffs moved out of Linden Square. *Johnson Decl.* at ¶¶ 4-5.

One week before moving out, Mr. Johnson and Ms. Puloka went to Linden Square's office to inform management that they would be leaving before month-end. *Johnson Decl.* at ¶ 6; *see*

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

*also* Declaration of Olivia Puloka ("*Puloka Decl.*") at ¶ 4. They were told to give notice in writing, despite the fact that the lease ended on November 30, so the Plaintiffs did as requested. *Johnson Decl.* at ¶ 6. Mr. Johnson and Ms. Puloka believed that everything was wrapped up, as they did not hear from Linden Square again.

However, in the bustle between moving in to their new space, Plaintiffs confused their first-month's payment for the new apartment with their November 2017 rent to Linden Square; in short, by oversight, Plaintiffs readily admit that they owe one month's rent to Linden Square. *Johnson Decl.* at ¶¶ 3, 29-32; *Puloka Decl.* at ¶ 16. They do not, however, agree that they owe the bulk of what Linden Square is collecting, as discussed *infra*. *Johnson Decl.* at ¶¶ 30-32; *Puloka Decl.* at ¶¶ 14-16.

## B. <u>Flagrantly False and Misleading Phone Calls</u>

In late 2019, Plaintiffs – again, having just welcomed their first child – sought a larger space to live. *Johnson Decl.* at ¶ 10. Plaintiffs noticed that Genesis was reporting to their credit a debt for over $8,000 supposedly related to Linden Square. *Id.* Mr. Johnson contacted Linden Square but was told that there was no record of his account. *Id.* at ¶ 11. On November 26, 2019, Mr. Johnson called Genesis and spoke to a representative named Misty. *Johnson Decl.* at ¶ 12; *see also* Declaration of T. Tyler Santiago ("*Santiago Decl.*") at ¶ 2, Ex. A, pp. 1-5.

During the call, Genesis was dismissive, rude, and condescending. *Johnson Decl.* at ¶¶ 13-17; *Santiago Decl.* at ¶ 2, Ex. A, pp 1-5. It also made numerous false and misleading misrepresentations, which are better classified as outright lies. First, Genesis told Mr. Johnson that a judgment had been entered against him **<u>and</u>** that garnishments had been sent to both Mr. Johnson and Ms. Puloka's employers. *Johnson Decl.* at ¶¶ 14-15; *Santiago Decl.* at ¶ 2, Ex. A, pp 1-5. Genesis also told Mr. Johnson that he was "evicted" – which came as a great surprise to him

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1 – and somewhat confusingly told him that he had skipped out on rent and moved out. *Johnson*

2 *Decl.* at ¶ 16. Genesis then told him that he breached a contract, and that there was nothing he

3 could do but pay $8,478.29 because there was a "court ordered judgment." *Johnson Decl.* at ¶¶

4 16-17; *Santiago Decl.* at ¶ 2, Ex. A, pp. 1-5. Contrary to Genesis' repeated false statements, **no**

5 **eviction ever occurred, no judgment was ever entered against either Antonio Johnson or**

6 **Olivia Puloka, and no garnishments were ever issued**. *Johnson Decl.* at ¶23; *Santiago Decl.* at

7 ¶ 3, Ex. B.

8       Mr. Johnson ended the call in a state of shock and fear, as Genesis had threatened his

9 livelihood, as well as that of Ms. Puloka. *Johnson Decl.* at ¶ 18. He was reluctant to tell Olivia

10 about the call because she was suffering health challenges after her pregnancy, but he had no

11 choice because they had to scramble to try and stop the wage garnishments. *Id.* at ¶ 18-19. The

12 next day, on November 27, 2019, with a clear head to investigate, Antonio Johnson called Genesis

13 again to learn more about the supposed judgment. *Johnson Decl.* at ¶ 20. He asked for the case

14 number and the location of the court that issued the judgment. *Id.* While these were simple

15 questions with straightforward answers, Genesis kept him on the phone, probing for information

16 about his location and his employer – information which would be useful for a creditor executing

17 on a judgment. *Johnson Decl.* at ¶ 21; *Santiago Decl.* at ¶ 2, Ex. A, pp. 6-12.

18       After a period of time, Mr. Johnson was finally given the case information for the alleged

19 judgment. *Johnson Decl.* at ¶ 24; *Santiago Decl.* at ¶ 2, Ex. A, pp 6-12. Genesis promised to e-

20 mail documentation supporting the alleged debt, which it failed to do. *Johnson Decl.* at ¶ 25;

21 *Santiago Decl.* at ¶ 2, Ex. A, pp. 6-12. Five days later, on December 2, 2019, Mr. Johnson still

22 had not received the promised documentation, so he called Genesis again. *Id.* The promised e-

23 mails never came. *Johnson Decl.* at ¶ 25.

PLAINTIFFS' PARTIAL MSJ - 5
2:20-CV-00573-RSM

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

C. **Plainly-False "Validation" of the Debt**

Though Mr. Johnson repeatedly asked for documentation about the debt, it was not forthcoming. However, in mid-January 2020, nearly two months after Mr. Johnson had started contacting Genesis, Plaintiffs received a collection letter. *Johnson Decl.* at ¶¶ 26-27, Ex. B; *Puloka Decl.* at ¶ 13, Ex. A. The letter claimed that Plaintiffs owed a total account balance of $6,695.57, though this was wholly unsubstantiated. *Id.* Linden Square and Genesis took a "kitchen sink" approach to stating why they thought they were owed money. Because the charges are so numerous, Plaintiffs present the following list of charges and an accompanying list of reasons these amounts obviously could not be owed.[2]

**Attorney Fee or Legal Charges – Johnson $447.00 –** There is no universe in which this amount could be owed. Linden Square began its unlawful detainer lawsuit <u>after</u> Plaintiffs had already moved out and submitted a redundant notice. *Santiago Decl.* at ¶ 5, Ex. D; *Johnson Decl.* at ¶ 5. Furthermore, the lawsuit was dismissed without a judgment, thus no attorney's fees were ever awarded, and Genesis may not collect this amount.

**Month-to-Month Charges - $200.00 –** The written lease ended on November 30, 2017, thus there is no month-to-month charge that could be assessed.

**Rent - $2,430.00 –** Plaintiffs only owe for November 2017 rent. However, rent was $1,215.00 per month and the lease ended on November 30, 2017. There is no justifiable reason to charge for two months of rent.

**Garage Remote - $100, Key Fobs - $200, Front Door and Mailbox Keys - $20 –** Plaintiffs returned the garage remote and key fobs to Linden Square's drop box as instructed. *Johnson Decl.* at ¶ 7; *Puloka Decl. at ¶* 15.

**Full Carpet Replacement - $985 –** On move out, the carpet was in fine condition and did not need replacement. *Johnson Decl.* at ¶ 8, 30; *Puloka Decl.* at ¶ 14. Ms. Puloka's friends and relatives helped Plaintiffs to deeply clean the apartment on move out. *Puloka Decl.* at ¶¶ 5, 14-15. Perhaps most damaging to Defendant's claim for full carpet replacement is the fact that it has no evidence that this was required or occurred, such as pictures of damaged carpet or receipts for its replacement.

---

[2] Plaintiffs do not admit that any charges not listed in this motion are owed, but only lists those charges that are simple to dismiss out of hand. In any event, All listed charges are taken from the attachment to Genesis' January 10, 2020 collection letter. *Puloka Decl.* at ¶ 13, Ex. A.

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

**Haul Trash and Furniture - $350** – Similar to the carpet issue, Plaintiffs cleaned the apartment and cleared it out, even renting a U-Haul truck. *Johnson Decl.* at ¶¶ 8, 30; *Puloka Decl.* at ¶ 5. Genesis has no evidence that trash and furniture was left behind, and no evidence of the cost of removing such items.

**Full Paint Including Labor and Materials - $500** – Plaintiffs lived in the apartment for six months, so the claim for full painting is dubious. Similar to above, Plaintiffs cleaned the apartment with the help of friends and relatives. Again, Genesis has no photographs of the condition of the walls, nor does it have receipts for the cost of painting.

**Replacement of Various Doors and Door Frames - $518** – Genesis has no receipts or pictures to prove these events happened. Plaintiffs did not leave doors or frames broken. *Johnson Decl.* at ¶ 30; *Puloka Decl.* at ¶ 14.

**Cleaning Charge – Heavy Duty - $150** – Again, Plaintiffs cleaned the apartment thoroughly, enlisting family and friends to assist. No such cleaning was necessary, and Genesis has no proof of it occurring.

**Interest On All Unjustified Charges - $1,681.78** – Overall, Genesis is assessing 12% on all of the above mentioned charges. While some interest may be legitimate, based on the fact that Plaintiff's likely owe for November 2017 rent, some utilities, and some late fees, the bulk of the charges are unsupportable and most of the interest assessed is not allowed.

**Hidden Attorney Fee - $200.00** - Genesis' collection letter states that Plaintiffs owe $6,695.57 in principal and $1,681.75 in interest. Those numbers total $8,377.35. Yet the collection letter states that $8,577.35 is owed. Nowhere is the extra $200.00 justified. It was not until Plaintiffs conducted discovery that Genesis disclosed a hidden, $200.00 attorney fee for "preparation of assignment of interest for potential lawsuit." *Santiago Decl.* at ¶ 6, Ex. E. It is axiomatic that one may not collect attorney's fees when they have not been awarded by a court. Thus, this amount is not owed.

In sum, Genesis was attempting to collect amounts not owed that were not supported by law or fact. Genesis also simply made up charges and calculated interest upon those charges, in an apparent attempt to boost profits. What makes this proposition even more disturbing is – in addition to the lack of a judgment which it had insisted was real – the fact that **Genesis knew it did not have evidence of most of these charges**. *Santiago Decl.* at ¶ 4, Ex. C. For what would normally seem like a red flag, Genesis was undeterred by the fact that its client was unable to provide any proof in response to repeated requests. By January 2020, despite the lack of proof which Genesis itself had requested, Genesis maintained its demand that Plaintiffs pay the entire

amount of the alleged debt. *Id.* As of last month, Genesis continues to adversely report on Ms. Puloka's credit that she owes over $9,000.00. *Puloka Decl.* at ¶ 17, Ex. B.

## III.     LAW AND ARGUMENT

### A.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is met, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

Facts must be viewed in the light most favorable to the non-moving party <u>only if there is a genuine dispute to those facts</u>. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (citation omitted). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and the Court should grant summary judgment. *Id.*

### B.  <u>Legal Standard: The FDCPA Imposes Strict Liability on Debt Collectors, and Whether a Communication is False or Misleading is Governed by an Objective Standard.</u>

#### 1.  <u>The FDCPA is a strict-liability statute construed liberally in favor of debtors.</u>

The Fair Debt Collection Practices Act was enacted to protect consumers from improper or abusive debt collection efforts. 15 U.S.C. § 1692. The FDCPA is a strict-liability statute which "makes debt collectors liable for violations that are not knowing or intentional." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008); *see also McCollough v. Johnson, Rodenburg*

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

& *Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011). "A single violation of any provision of the Act is sufficient to establish civil liability under the FDCPA." *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997).

The FDCPA is a remedial statute construed liberally in favor of the consumer. *Tourgeman v. Collins Fin. Servs, Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) ("we wish to reinforce that the broad remedial purpose of the FDCPA is concerned primarily with the likely effect of various collection practices on the minds of unsophisticated debtors.").

    2.  <u>The "least sophisticated consumer" standard applies to Plaintiffs' FDCPA claims.</u>

The FDCPA's "statutory text itself is aimed squarely at the debt collector's conduct, rather than at its effect on the consumer." *Tourgeman*, 755 F.3d at 1117. In determining whether a § 1692e (false or misleading representations) or § 1692f (unfair practices) violation has occurred, courts apply the "least sophisticated consumer"[3] standard. *Wade v. Regional Credit Ass'n.*, 87 F.3d 1098, 1100 (9th Cir. 1996). "The least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (citation and internal quotation marks omitted).[4] The inquiry is therefore objective; it is not relevant whether a particular person was actually misled.

The least sophisticated consumer standard "protects all consumers, the gullible as well as the shrewd...the ignorant, the unthinking, and the credulous." *Clark*, 460 F.3d at 1171 (citation and

---

[3] This is alternatively termed the "least sophisticated debtor" standard.

[4] *See also Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007) (The "least sophisticated consumer" standard is from the perspective "of the average consumer in the lowest quartile (or some other substantial bottom fraction) of consumer competence.")

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

quotation omitted). "Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether the least sophisticated debtor would likely be misled by a communication." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). Whether a violation of §§ 1692e or 1692f has occurred is a question of law. *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997).

### C. Defendant Is Subject To The FDCPA and WCAA

It is not a matter of meaningful dispute as it has also been judicially established that Genesis is a "debt collector" under 15 U.S.C. §1692a(6) and a "collection agency" under RCW 19.16.100(4). *Dawson v. Genesis Credit Mgmt., LLC*, 2017 WL 5668073 (W.D. Wash. Nov. 27, 2017) (Coughenour, J.). It is also a matter of public record that Genesis is a licensed collection agency in Washington State. *Santiago Decl.* at ¶ 7, Ex G.

Similarly, there can be no dispute that Plaintiffs are "consumers" under 15 U.S.C. § 1692a(3) and "debtors" as defined by RCW 19.16.100(8), as the alleged debt at issue arises out of a residential lease agreement.

### D. A Lease Ends On Its Expiration Date, and Plaintiffs Cannot Owe Rent for December 2017

Washington's Residential Landlord-Tenant Act ("RLTA") is unambiguous: "In **all cases** where premises are rented for a specified time, by express or implied contract, the tenancy **shall** be deemed terminated at the end of such specified time." RCW 59.18.220 (emphasis added). In this instance, the RLTA codifies what has been the law for nearly a century. *See Lowman v. Russell*, 133 Wash. 10, 11–12 (1925); *W. Union Tel. Co. v. Hansen & Rowland Corp.*, 166 F.2d 258, 262 (9th Cir. 1948) ("[w]hile recognizing the distinction between the lease-term and the tenancy itself, the law of Washington holds that the expiration of the former results in the termination of the latter"); *Carlstrom v. Hanline*, 98 Wn. App. 780, 786 (2000).

Here, Plaintiffs had a six-month lease ending November 30, 2017.  Thus, when they turned in their keys and moved out of the apartment on November 7, 2017, their relationship with Linden Square had concluded.  *Carlstrom,* 98 Wn. App. 786 (2000).

Among its many charges, Genesis attempted to collect "rent" of $2,430.00, comprised of November 2017 rent, which Plaintiffs readily admit they owe, and December 2017 rent, which as a matter of law they do not owe. Any attempts by Genesis to collect or representations that $2,430.00 in rent was owed is false.

**E.  Defendant Violated the FDCPA**

    1.  Defendant violated 15 U.S.C. § 1692e

Section 1692e, generally, prohibits the use by a debt collector of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).  A misstatement need not be knowing or intentional to support liability.  *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006).  Here, Genesis made a plethora of made false and misleading representations in both phone calls and in writing to Plaintiffs, and in reporting an extremely inflated balance to Plaintiffs' credit.  The violations are so numerous that the most effective way to present them is in list format:

1)  **Fake Judgment:** On November 26, 2020, Genesis told Plaintiffs that they had been evicted, that a judgment had been entered against them, and that their wages would be garnished based on the judgment, when it knew that no judgment existed. When they called to clarify on November 27, 2019, Genesis did nothing to clarify the lie that it had told the previous day, nor did it do so on December 2, 2020.

2)  **Unsubstantiated Charges**: On January 10, 2020, Genesis misrepresented to Plaintiffs that they owed attorney's fees, cleaning fees, carpet replacement charges, painting charges, key and garage remote replacement charges, and broken door replacement charges when it knew it had no evidence to support such fees and charges.

**ANDERSON│SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

3) **Improper Interest**: Genesis assessed interest on the above listed fees and charges when it knew that it had no evidence to support those fees and charges. Genesis reported this interest (inflating the overall balance) to Plaintiffs' credit, and continues to report to Ms. Puloka's credit. Genesis also demanded this interest in the November 26 call, as well as the January 10 letter.

4) **Rent Not Owed**: Represented that Plaintiffs owed rent for December 2017, which was plainly contrary to law.

5) **Unlawful Fee**: Attempted to collect an unjustified and hidden $200 attorney fee, the basis of which was disclosed until discovery was conducted in this case.

> 2. <u>Defendant violated 15 U.S.C. § 1692e(2)</u>

Section 1692e(2) prohibits "[t]he false representation of ... the character, amount, or legal status of any debt." *Donohue*, 592 F.3d at 1030. The actions identified above (§ 1692e violations) would also apply here, as the "character, amount, or legal status" of the debt was misrepresented by Genesis.

> 3. <u>Defendant violated 15 U.S.C. § 1692e(8)</u>

Section 1692e(8) prohibits a debt collector from communicating to any person credit information which is known or which should be known to be false. Here, Genesis reported the inflated balances (both principal and interest) to the credit bureaus on numerous occasions to the credit of both Plaintiffs. Genesis knew the information was false, as its own collection notes reflect it had no proof of the charges. Therefore, Genesis violated § 1692e(8). *Burr v. Evergreen Prof'l Recoveries, Inc.*, No. C19-949RSM, 2020 WL 4261137, at *2 (W.D. Wash. July 24, 2020). Genesis is still reporting the obviously incorrect amounts to Ms. Puloka's credit. *Puloka Decl.* at ¶ 17, Ex. B.

> 4. <u>Defendant violated 15 U.S.C. § 1692f and § 1692f(1)</u>

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." *Donohue*, 592 F.3d at 1030.

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

Section 1692f(1) prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee, charge, or expense ...) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949 (9th Cir. 2011).

Here, Defendant violated § 1692f and f(1) by lying to Plaintiffs about a judgment and garnishment in an attempt to obtain payment. Such behavior is obviously unfair and unconscionable. Furthermore, Genesis attempted to collect numerous charges, fees, and interest that it knew were totally unsubstantiated and without basis. Finally, Genesis reported a debt comprised of fake charges, fees, and costs that were not owed to Plaintiffs' credit, and are currently reporting to Ms. Puloka's credit. *Puloka Decl.* at ¶ 17, Ex. B.

## F. **Genesis Has No "Bona Fide Error" Defense**

While Genesis will likely assert that its numerous, repeated, ongoing, and systemic violations were the result of some dark comedy of errors, the "bona fide error" defense provided in 15 U.S.C. § 1692k(c) requires <u>much</u> more than simply alleging the defense. The "bona fide error" defense is an affirmative defense which must be proven by the defendant. *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008). Here, the burden is upon Genesis to establish the defense as to each cause of action.

A defendant asserting "bona fide error" bears the burden of establishing that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011) (citation omitted).

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

As to the third element: "If the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Reichert*, 531 F.3d at 1007 (citation omitted).

1. Genesis is unable to articulate to which violations the bona fide error defense applies

In discovery, Plaintiffs asked Genesis to align its claimed defense(s) to the violations of the FDCPA at issue. Genesis responded with nothing but objections, and a general statement that its agents receive training, but that the agent "misread the account notes and status." *Santiago Decl.* at ¶ 6, Ex. E. It is unclear to which violation this general statement applies, as Genesis simply states that the defense applies to Counts 1 and 2, which plainly fails to address the myriad of violations identified in this motion. It is unclear how Genesis' answer accounts for each violation and the defense fails on this basis alone.

2. Genesis cannot identify the "error" which led to the unidentified violation

The bona fide error defense only applies to mistakes of fact, and not to mistakes of law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 599 (2010) (bona fide error defense available "where a violation results from a qualifying factual error"). Thus, a defendant asserting this affirmative defense must identify a specific factual occurrence constituting an "error," which Genesis has not done here.

Genesis was unable to provide any information at all in discovery about its purported "error," other than to state that all of its agents somehow misunderstood that there was no judgment or garnishment. *Santiago Decl.* at ¶ 6, Ex. E. Moreover, when asked to produce documentation about the supposed error in discovery, Genesis simply pointed to the call recordings without any

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

further explanation. *Santiago Decl.* at ¶ 7, Ex. F. This case has been pending since March 2020, and Genesis has had ample opportunity to articulate the basis of its bona fide error defense and has been unable to do so. There is no "error" that can account for outright and repeated lies to a consumer, and Genesis refuses to specify an error that led to the myriad of violations committed by Genesis.

3. <u>Genesis is unable to identify a procedure or procedures designed to avoid the unidentified error</u>

It bears repeating that Genesis has the burden to prove its bona fide error affirmative defense. Thus, it must demonstrate that it maintains reasonable procedures *designed to avoid the violation*. Genesis' refuses to identify the error that lead to violation, so it is impossible to discern whether a procedure even exists to avoid the error. Further compounding this problem is the fact that Genesis refuses to identify or explain any specific procedure. In responses to interrogatories, Genesis makes the general statement that its agents are trained to read account notes and status. *Santiago Decl.* at ¶ 6, Ex E. This could generically be stated about any employee at any company.

When asked to produce documents about this general training, Genesis responded with a myriad of objections, bizarrely calling its own procedures irrelevant and the production of them burdensome when its own defense relies on those procedures. *Santiago Decl.* at ¶ 7, Ex. F. Again, this case has been pending for eight months; if Genesis had procedures to avoid the unidentified errors that it made, which led to the unidentified violations that the errors apply to, it has had ample opportunity to support its defense. Genesis cannot prove any element of the bona fide error defense, and it should be stricken.

**G. <u>Defendant Violated the WCAA as Enforced Through the CPA</u>**

The WCAA is enforced through the Washington Consumer Protection Act. Under *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784 (1986), a CPA plaintiff

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

must establish five elements: (1) an unfair or deceptive practice, (2) occurring in trade or commerce, (3) which affects the public interest, (4) an injury to the plaintiff's business or property, (5) that the injury was caused by the unfair or deceptive practice. A WCAA violation is a "per se" violation of the CPA, and satisfies the <u>first two elements</u> (unfair or deceptive practice and occurring in trade or commerce). *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 53 (2009). A violation of the WCAA has since been definitively determined to satisfy the <u>third element</u>, "public interest impact," as well. *Id.* at 54 (With respect to the WCAA and CPA, "the business of debt collection affects the public interest…"). All that remains is whether there was "injury," as that term of art is used by Washington jurisprudence, and whether it was caused by Defendant's deceptive or unfair practice.

The CPA addresses "injuries" rather than "damages"; quantifiable monetary loss is not required. *Panag* 166 Wn.2d 58. Simply consulting an attorney is sufficient to show injury. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412 (2014) (*citing Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 62 (2009)). In other words, to borrow from a contractual idiom, "a mere peppercorn will suffice."

The remaining elements – injury and causation – are plainly met as well. As stated above, "injury" can be fleeting or minimal for a CPA violation. Plaintiffs incurred expenses in seeking counsel to determine her legal rights and responsibilities, and this suffices for purposes of establishing this element. *Frias*, 181 Wn.2d 412; *Johnson Decl.* at ¶¶ 33-34. The extent or amount is not pertinent to this motion, which seeks summary judgment as to liability alone.

As discussed above, Genesis attempted to collect amounts that it knew Plaintiffs did not owe, including numerous fees, charges, and interest. These actions simultaneously violate several provisions of both state and federal law. Plaintiffs do not contend that each FDCPA violation is

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

*necessarily* or *causally* a violation of the WCAA, but rather that, in this case, the same offending behavior happens to overlap (and violate) several statutes. Thus, in the interests of brevity and judicial economy, Plaintiffs incorporate by reference the preceding sections of this brief.

RCW 19.16.250(21) prohibits the collection, or attempted collection, of any amounts not authorized by law. RCW 19.16.250(15) prohibits representing that an existing obligation may be increased by the addition of any charges when in fact such charges may not be legally added othe obligation. Thus, Defendant Genesis violated the WCAA each and every it demanded money, as the amount demanded was always inflated by amounts not owed. Genesis also added attorney's fees for obtaining a judgment that never existed, hidden attorney's fees for an alleged assignment, and added interest calculated on those unsupported attorney's fees. Additionally, Genesis calculated interest on amounts that could not be owed as they were not supported by facts or evidence. As the number of WCAA violations is immaterial at this time, Plaintiffs need not detail the number of ways in which each statute was further violated by Defendant.

**H. Plaintiffs Do Not Seek Summary Judgment on Damages At This Time**

Plaintiffs will seek recovery of their actual damages at trial and a determination of her attorney's fees and costs at the conclusion of this case.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this motion for partial summary judgment be granted.

//

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

Dated this 5th day of November, 2020.

**ANDERSON SANTIAGO, PLLC**

By: /s/ T. Tyler Santiago
Jason D. Anderson, WSBA No. 38014
T. Tyler Santiago, WSBA No. 46004
Attorney for Plaintiffs
787 Maynard Ave. S.
Seattle, WA 98104
(206) 395-2665
(206) 395-2719 (fax)

## Certificate of Service

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mark Case
P.O. Box 30131
Spokane, WA 99223
Telephone: 425-890-2817
Email: markcaselaw@gmail.com

Krista L. White
P.O. Box 3630
Everett, WA 98213
Telephone: (425) 646-1382
Email: Kristaw@genesiscred.com
Attorneys for Defendant

  /s/ T. Tyler Santiago
T. Tyler Santiago

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719